# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 1, 2022

Lyle W. Cayce
Clerk

No. 21-50368

Kevin Nichols,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:19-CV-1

Before Barksdale, Stewart, and Dennis, *Circuit Judges*.

Per Curiam:*

Kevin Nichols' action under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671, *et seq.*, arises out of an injury sustained while he was in federal custody at the Ector County Correctional Center (ECCC) (a non-federal facility). At issue are whether: the district court lacked subject-matter jurisdiction in part because the discretionary-function and

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-50368

independent-contractor exceptions to the FTCA apply to most of the claims; and, for the others, Texas law requires expert testimony to prove negligence claims for delayed surgery where infection prevented earlier intervention. AFFIRMED.

I.

Pursuant to a contract with the United States Marshals Service (USMS), ECCC housed federal detainees awaiting sentencing and transfer to prison. For the detainees, ECCC was responsible for: providing medical care, including arranging for external emergency care. On 3 January 2017, Nichols was involved in an altercation at ECCC with another person in custody, resulting in Nichols' sustaining a broken ankle. ECCC transported him to an emergency room, where: his ankle was set; he was advised surgery was required; and a consult was scheduled with an outside provider.

Two weeks later, Nichols was transferred to Federal Correction Institution at Big Spring (FCI-BS). There, he was examined by a Bureau of Prisons (BOP) health provider, who recommended a consult with a local orthopedic specialist to evaluate for surgery. (BOP had contracted with Correct Care Solutions (CCS) to provide orthopedic specialty care to those in custody at FCI-BS.)

Over two weeks later, an orthopedic specialist examined Nichols and recommended surgery. On the day of the scheduled surgery, however, the surgeon diagnosed Nichols with Methicillin-Resistant Staphylococcus Aureus (MRSA) and postponed the surgery because of the infection. (Nichols alleges he contracted MRSA at ECCC.) Surgery was rescheduled for 22 February, but the infection had not cleared, and surgery was again postponed.

In May 2017, the infection had spread to Nichols' face. After being admitted to the hospital, he was diagnosed with facial cellulitis. Because of

No. 21-50368

his active infection, the attending physician noted surgery was not possible. Nichols was released from custody that month and later had surgery.

Nichols filed a myriad of negligence claims against the United States in January 2019. (He also filed suit against GEO Group, Inc., the now owner of ECCC, but voluntarily dismissed the claims.) Nichols' claims, which do not specify which government actor or entity was negligent or what standard of care was breached, can best be divided into the following categories: employment decisions; policies and procedures, and care, custody, and control; selecting and retaining contractors; moving and designating those in custody; negligence of ECCC and CCS and their employees; and inadequate health care, medical malpractice, and lack of cleanliness, based on the actions and inactions of BOP personnel.

In granting, in part, the Government's motion to dismiss for lack of subject-matter jurisdiction, the district court concluded the discretionary-function doctrine barred Nichols' claims related to: the Government's employment decisions; policies and procedures and care, custody, and control; selecting and retaining contractors; and moving and designating those in custody. Related to such lack of jurisdiction, it also concluded: the independent-contractor exception barred Nichols' claims for alleged negligence of ECCC, CCS, and their employees. Finally, the Government's alternative summary-judgment motion against Nichols' remaining negligence claims was granted.

II.

Nichols asserts the court erred in granting: the motion to dismiss in part because neither the discretionary-function nor independent-contractor exceptions apply; and summary judgment because Texas law does not require expert testimony regarding the standard of care and causation when the claim is for negligence in providing care, rather than for the type of care

3

No. 21-50368

provided.  Essentially for the reasons stated by the district court, Nichols' challenges fail.

## A.

The district court's dismissal in part for lack of subject-matter jurisdiction is reviewed *de novo*. *E.g.*, *Spotts v. United States*, 613 F.3d 559, 565 (5th Cir. 2010).  The court can dismiss under Federal Rule of Civil Procedure 12(b)(1) on:  "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts".  *Id.* at 565–66 (citation omitted).  The party asserting jurisdiction has the burden of proving subject-matter jurisdiction. *E.g.*, *In re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020).

Under the FTCA, the United States waives sovereign immunity, "provid[ing] district courts with jurisdiction over monetary claims against the Government for the negligent or wrongful acts of its employees 'where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred'". *Spotts*, 613 F.3d at 566 (quoting 28 U.S.C. § 1346(b)(1)).  Exceptions to jurisdiction under the FTCA include for a discretionary-function and being an independent-contractor.  *See* 28 U.S.C. § 2680; *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (discretionary-function exception); *United States v. Orleans*, 425 U.S. 807, 813–14 (1976) (independent-contractor exception).

### 1.

Under the FTCA, the discretionary-function exception applies, and the Government is not liable for:

> Any claim based upon an act or omission of an employee of the
> Government, exercising due care, in the execution of a statute
> or regulation, whether or not such statute or regulation be

No. 21-50368

> valid, or based upon the exercise or performance or the failure
> to exercise or perform a discretionary function or duty on the
> part of a federal agency or an employee of the Government,
> whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Our court uses a two-step inquiry to determine whether the discretionary-function exception applies: "the conduct must be a matter of choice for the acting employee"; and "the judgment [must be] of the kind that the discretionary-function exception was designed to shield". *M.D.C.G. v. United States*, 956 F.3d 762, 771–72 (5th Cir. 2020) (alteration in original).

The first step does not apply "if the government employee's challenged conduct violated a specific directive in a federal statute, regulation, or policy". *Id.* at 772. Plaintiff bears the burden of pointing to relevant authority to show the conduct was not a choice. *See Campos v. United States*, 888 F.3d 724, 731 (5th Cir. 2018). The second step "protects only governmental actions and decisions based on considerations of public policy". *Gaubert*, 499 U.S. at 323 (citation omitted).

a.

For his claims regarding employment decisions, Nichols concedes on appeal that "there is no statute which mandates conduct related to employment decisions". Nichols has, therefore, not met his burden of showing relevant authority was violated. For the public-policy step, our court has repeatedly held employment decisions are subject to the discretionary-function exception. *E.g.*, *M.D.C.G.*, 956 F.3d at 772 (explaining "federal employees' supervision of subordinates involves the kind of judgment that the discretionary-function exception was meant to protect").

b.

Nichols also contends the Government "failed to establish, maintain, and follow policies related to controlling infectious diseases and maintaining

No. 21-50368

care, custody, and control of [those in custody] and negligently maintained care, custody, and control of [him]". The district court noted that, although he points to no relevant authority (he also fails to do so on appeal), he did refer to 18 U.S.C. § 4042 (duties of BOP) in his complaint. Even if § 4042 is the statutory authority that pertains to his claims regarding policies and procedures and care, custody, and control, our court has held § 4042 affords officials discretion. *See Campillo v. United States Penitentiary Beaumont*, 203 F. App'x 555, 557 (5th Cir. 2006) ("We agree with the other circuits that have held that neither § 4042's mandate to protect prisoners nor the prohibition against cruel and unusual punishment defines a non-discretionary course of action specific enough to render the discretionary function exception inapplicable."). Further, policy and procedures, and care, custody, and control are decisions typically in the discretion of administrators. *See Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

c.

Nichols concedes his claims related to selection of contractors are barred by the discretionary-function exception.

d.

Finally, for his claims regarding securing, moving, and designating those in custody, Nichols again does not point to governing authority. Our court has held that decisions regarding placement of those in custody fall under the discretionary-function exception. *See Huff v. Neal*, 555 F. App'x 289, 298–99 (5th Cir. 2014) (explaining that placement of those in custody

6

"is the type of conduct that the discretionary function was designed to shield").

2.

Pursuant to the independent-contractor exception, immunity has not been waived for negligent acts by those not considered an "employee of the Government", including "any contractor with the United States". 28 U.S.C. § 2671. Stated differently, if the negligent act was committed by an independent contractor, "the court must dismiss for lack of subject matter jurisdiction". *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998). In *Linkous*, our court identified ten factors relating to whether a person or entity is an independent contractor, such as: "the extent of control which, by the agreement, the master may exercise over the details of the work"; "the skill required in the particular occupation"; and "whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work". *Id.* at 276.

a.

Nichols contends the independent-contractor exception should not apply to ECCC (non-federal facility) staff due to the control exercised by the Government. He alleges: ECCC staff members transported detainees and were responsible for their care and safety, but they did not have "distance and freedom" typical of independent contractors; the facility and business of ECCC are directly related to the BOP; the day-to-day operations are essentially the same; and "BOP contracted with Ector County to supply the workplace, including the 'instrumentalities and tools' like secured doors, holding cells, and other instruments of running a detention facility". The Government counters: Nichols does not point to any hiring, retention,

training, or custody decision, leading to a delay of care; and employment and custody decisions are a policy matter.

ECCC was a distinct facility, and the Government had no control over it or its employees. Pursuant to the agreement, ECCC would "accept and provide for the secure custody, safekeeping, housing, subsistence and care of Federal detainees". ECCC was responsible for their medical care while inside the facility and for arranging emergency treatment needed outside it. (The Government is financially responsible for outside care, but it is up to ECCC to "utilize outside medical care providers . . . covered by the USMS's National Managed Care Contract".) The contract also required ECCC to have an infectious-disease control program, and gave the Government access to the facility and the detainees. Although the Government had such access, it did not have control over the facility or its employees.

### b.

For CCS, Nichols concedes the Government's assertion of independent-contractor status "is stronger" because staff required a skill in their occupation. In any event, he asserts his claims are not against CCS, but against the BOP employees for failure to transfer him to CCS in an appropriate amount of time. (As noted *supra*, his claims regarding securing, moving, and designating those in custody fall within the discretionary-function exception.)

### B.

A summary judgment is reviewed *de novo*. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". FED. R. CIV. P. 56(a). For deciding whether genuine disputes of material fact exist, facts in the summary-judgment record are viewed in the light most favorable to the nonmovant.

No. 21-50368

*E.g.*, *Baylor Health Care Sys. v. Emps. Reinsurance Corp.*, 492 F.3d 318, 321 (5th Cir. 2007).

As discussed *supra*, because Nichols' claimed injury for which he seeks relief occurred in Texas, its substantive law is applied in this FTCA action. A health-care-liability claim is one "against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care". TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(13). For medical negligence actions, plaintiff must prove: "(1) a duty by the physician to act according to a certain standard; (2) a breach of the applicable standard of care; (3) injury or harm to . . . plaintiff; and (4) a causal connection between the breach of the applicable standard of care and the injury or harm". *W.C. LaRock, D.C., P.C. v. Smith*, 310 S.W.3d 48, 55 (Tex. App. 2010). "Generally, expert testimony is required to prove negligence in medical-negligence cases unless the form or mode of treatment is a matter of common knowledge or the matter is within the experience of a layperson." *Id.* at 56.

Nichols asserts: his claims are for negligence, not malpractice; expert testimony is not necessary if a layperson could testify to the fact that Nichols needed medical attention; and expert testimony is not necessary to establish causation. The Government responds: although Nichols maintains he is not asserting medical malpractice claims, Texas law requires stricter pleading of proof requirements in all health-care-liability claims; because Nichols' claims relate to his medical treatment, they constitute health-care liability under Texas law; Texas law requires expert testimony when the alleged negligence does not fall within the experience of a layman; Texas law also requires plaintiff to prove a causal link between negligence and injury; and Nichols did not meet this burden because lay testimony is not sufficient to show that an earlier surgery would have prevented his alleged injury.

No. 21-50368

Nichols' claims are health-care-related negligence claims. Therefore, expert testimony is required to establish the standard of care. It is also required to show causation because, whether the alleged acts caused Nichols' alleged injury "is [not] a matter of common knowledge or . . . within the experience of a layperson". *Id.*

### III.

For the foregoing reasons, the judgment is AFFIRMED.